CASE 54.—ACTION BY THE FIDELITY & CASUALTY COMPANY AGAINST THE PALMER TRANSFER COMPANY.—April 28, 1909.

# Palmer Transfer Co. v. Fidelity Casualty Co.

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

Insurance — Accident   Insurance — Premiums—Policy—Construction.—Where an accident policy issued by plaintiff covering the drivers of vehicles of defendant transfer company provided that the premium was based on the entire compensation earned by the drivers, and that, if it should exceed the sum set forth in the schedule furnished, defendant should pay the additional premium earned, plaintiff was entitled to a premium based on the entire compensation paid the drivers, though part of the time they were employed as stablemen.

CRICE & ROSS and MILLER & MILLER for appellant.

WHEELER, HUGHES & BERRY for appellee.

OPINION OF THE COURT BY JUDGE LASSING.—Affirming.

The Palmer Transfer Company is a corporation doing a general transfer and passenger business in the city of Paducah. In the course of its business it employs a number of men to drive its hacks, busses

and other vehicles, and also employs a number of men as stablemen, hostlers, blacksmiths, etc. On November 1, 1904, it took out a policy of accident insurance in the appellee company, covering its drivers of vehicles. This policy was No. 43,076, and the premium charged therefor was estimated from a statement made by the appellant company, showing the number of drivers in its employ, and the weekly salary paid to each. This policy ran for 12 months. On November 1, 1905, the first policy expired, and another policy was issued in lieu thereof, for 12 months; the premium upon this policy being estimated the same as upon the first policy. On November 1, 1906, a third policy was issued for the same purpose, and the premium was estimated in the same way. In the application for each of these policies it was represented that there would be three hacks, one hotel coach, one United States mail wagon, and two baggage wagons engaged in the conduct of appellant's business. Each policy contained the following provision regulating the premium thereon: "Condition J.: The premium is based upon the entire compensation earned by the drivers of the assured during the period of this policy. If the assured himself drive any draught or driving animal or vehicle there shall be included therefor in the compensation a sum equivalent to the average compensation of the driver of a team covered hereunder. Whenever employes are compensated, in whole or in part, by store certificates, board, merchandise, credits or any other substitute for cash, the amount of compensation covered by such substitutes shall be included in the compensation. If such compensation exceeds the sum set forth in the schedule, the assured shall immediately pay the com-

pany the additional premium earned; if such compensation is less than the sum set forth in the schedule, the company will return the unearned premium, when determined; but the company shall receive or retain not less than fifty dollars ($50.00), it being agreed that this sum shall be the minimum earned premium.''

At the date of the delivery of each of these policies the estimated premium thereon was paid by appellant, and at some time after the expiration of the first and second of said policies, upon a statement made by appellant to appellee, appellee rebated to appellant company a portion of the premium which it had paid at the date of issue of the policy. It appears that no auditor of appellee had, in the meantime, audited the books of appellant to ascertain whether or not the statement made by appellant as to the amount of money annually paid to its drivers was correct. Some question having been raised as to the correctness of the reports furnished by appellant, appellee caused the books of appellant company to be audited, and this investigation disclosed the fact that appellant had, during each of the years covered by the contract of insurance, paid to its drivers a sum largely in excess of that reported in the statement which it had made to appellee, and demand was therefore made by appellee upon appellant, not only for the return of the premium rebated, but also for the payment of the additional premium for each year as called for by the contract of insurance. Appellant, while admitting that it had paid to its drivers the amount of money reported by the auditor for appellee company, insisted that, inasmuch as their said drivers had not devoted more than one-half of their time to the business

of driving, the sum which they had reported as paid to their drivers was, in fact, in excess of what it should have been. The appellant company had charged one-half of the sum paid to those employed as drivers to their account as stablemen. It seems that these drivers, when not actively engaged in driving, were required to do other work around the transfer barn.

It appears from the pleadings that appellant also took out other accident insurance with appellee, covering its stablemen and other employes. The annual premium charged on this latter class of policies was much cheaper than that charged on the policy covering the drivers. Appellant refused to pay the sum demanded by appellee, or any sum whatever as additional premiums, and thereupon appellee instituted a suit to recover same. Appellant answered and joined issue which formed the basis of appellee's claim, and, in addition, pleaded that as to the claim on policies 1 and 2 there had been a settlement and an adjustment thereof, in which the appellee company had refunded to it certain designated portions of the premium which had been paid when the policy was issued. It also pleaded that the method of bookkeeping which had been adopted and followed by it had been approved, acquiesced in, and consented to by the local agent of the appellee company. The material allegations of the answer were traversed, proof was taken, and the case submitted to the chancellor for judgment. He found in favor of the insurance company for the full amount sued for, and, being dissatisfied with that finding and judgment, the transfer company appeals.

Counsel for appellant can not seriously rely upon the defense of settlement as to the dispute over pre-

miums covering the first and second policies of insur-
ance. There was no settlement, but the insurance
company, without investigation, accepted the state-
ment furnished it by appellant as correct, and fixed
the premium for each year according to the statement
as regulated by the terms of the policy. If, as a mat-
ter of fact, the statement for each of said years, as
furnished by appellant, was not correct, and appel-
lee was deceived or misled by reason thereof, appel-
lant would be in no position to avail itself of its own
error or wrong. The policy itself furnishes the real
contract. The method of bookkeeping adopted and
used by appellant has nothing to do with the ques-
tions involved in this litigation. The contract of
insurance provides definitely and distinctly the man-
ner in which the premiums to be paid shall be esti-
mated at the date upon which the policy is issued,
and determined with accuracy at the expiration there-
of. Hence it is immaterial that the local agent of ap-
pellee was advised of the method of bookkeeping used
by appellant. The premium to be paid is determined,
not by the method of bookkeeping employed, but by
the amount of money actually paid to the drivers.
The only question therefore which we deem it neces-
sary to consider is whether or not, under the pro-
visions of the policy, appellant had the right to have
the premiums on said policies fixed by considering
the total compensation paid to the drivers while
actually engaged in the business of driving, or wheth-
er the total compensation received by them while in
the employ of appellant company must be taken into
account.

While the business of appellant is a hazardous one,
the greater part of the hazard is confined to the use

of its vehicles, and hence the cost of insuring it on
account of loss by accident that may occur to pas-
sengers riding in its vehicles, or to the public that
may be injured by reason of any negligence of its
drivers, is correspondingly high. It would be impos-
sible to determine what would be a fair charge to
make for assuming this risk without some data to
serve as a guide, and hence appellee required that
appellant furnish certain information concerning the
nature, character, and extent of its business as a
condition prerequisite to entering into a contract of
insurance. This information is the "statement" in
the policy. The facts therein set out were exclusively
within the knowledge of appellant, and, as they form
the very basis and foundation of the contract, it is
bound by them. It will be observed that the state-
ment describes the number and character of vehicles
used in the transportation of passengers and freight,
and gives the number of drivers employed and their
compensation. There is no intimation in this infor-
mation furnished as to what part of each driver's
time is employed in driving. No such information is
sought, and if it had been it could not have been
furnished with any degree of accuracy, for this would
necessarily depend upon the run of business which
appellant would have. No estimate of the hazard as-
sumed could be based upon such information, but
when appellee knew the number and kind of vehicles
used by appellant in its business, and the number
of drivers employed and their pay, a basis was fur-
nished upon which an estimate could be made. Upon
such statement the value of the hazard was figured
and the contract of insurance made, with the pro-
viso that, should there be an increase or decrease of

drivers so employed, the cost of insurance should be increased or decreased accordingly.

If appellant's contention is correct, then there would have been no occasion for issuing a different policy covering different grades of employes; but all that would have been necessary to do would be to state the total number of employes, and how much of the time of each (estimating as he proposes in this case to do) would be devoted to the discharge of the several duties that might be assigned to them. The fact that the business was not conducted in this way is persuasive that such a plan was not contemplated. If part of the time of the driver was taken up in the discharge of other duties, and his compensation while so employed properly chargeable as pay to "stableman," then for such time he was not a driver, and if an accident had occurred while he was driving, and the insurance company had sought to defend upon the ground that he was a stableman, would such a defense be regarded as meritorious? Certainly not; and, as such fact could not be used as a defense by the insurance company, it can no more be used as a shield by the transfer company to enable it to escape liability when called upon to pay the premium as fixed by the terms of the contract.

The contract fixes the premium by taking into consideration the number of vehicles used, and the drivers employed, and their compensation, without regard to the length of time actually employed by each driver while driving, and the trial court having so construed it, and entered his judgment accordingly, we are of opinion that it should be ,and is, affirmed.