CASE 20.—ACTION BY THE FIDELITY & CASUALTY COM-
PANY, OF NEW YORK, AGAINST PALMER & HAR-
DIN.—February 10, 1910.

## Palmer & Hardin v. Fidelity & Casualty Co.

Appeal from Jefferson Circuit Court (Chancery
Branch, First Division).

SHACKELFORD MILLER, Judge.

From the judgment defendants appeal.—Reversed.

1.  Insurance—Indemnity Insurance—Right to Inspect Insured's
    Books.—An indemnity insurance policy for a premium based
    on the gross amount of wages paid by insured, stipulating
    that insurer shall have the right at all reasonable times to
    examine the books of insured so far as they relate to the
    wages paid, must limit its demand to examine the books to
    reasonable hours and on reasonable days, and it may not
    rightfully demand to examine the books on Sundays or after
    business hours at night or when insured uses the books.
2.  Pleading—Construction.—The allegations of a pleading are
    taken most strongly against the pleader.
3.  Insurance—Indemnity Insurance—Examination of Insured's
    Books—Actions.—A petition by insurer issuing an indemnity
    policy for a premium based on the gross amount of wages
    paid by insured for an examination of insured's books, which
    merely alleges that it has repeatedly requested insured for
    permission to examine its books, and which does not allege
    that insured is indebted to insurer in any sum, and which
    does not aver that the settlement had at the end of the
    term of the policy was procured by fraud or mistake as to
    the amount of wages paid, does not show a right to examine
    the books given by the policy stipulating that insurer shall
    have the right at all reasonable times to examine insured's
    books.
4.  Insurance—Indemnity    Insurance — Premium — Settlement—
    Effect.—Where insurer in an indemnity policy for a prem-

ium based on the gross amount of wages paid by insured and insured made a settlement at the end of the policy based on the amount of wages paid by insured, the settlement was final, unless impeached by fraud or mistake, which insurer must plead and prove.

M. A., D. A. & J. G. SACHS for appellants.

FRED FORCHT, JR., and W. H. FIELD for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE BARKER— Reversing.

The appellants, Palmer & Hardin, are manufacturers doing business in the city of Louisville. On the 6th day of July, 1899, they obtained from the Fidelity & Casualty Company of New York an accident and casualty policy whereby they were insured against liability for accidents to their employes for the succeeding year ending July 6, 1900. After the expiration of this policy a new one was issued, in all substantial respects identical with the old policy, for the following year, and so on until July, 1903, when the last policy was issued covering the liability of the insured for accidents for the year ending July 6, 1904. After this period the appellants ceased to do business with the appellee, and obtained accident insurance from other companies. On the 17th day of July, 1907, this action was instituted by the insurance company, being in the nature of a bill of discovery, for the purpose of being allowed to examine the appellant's books for the time covered by the five accident policies heretofore mentioned. The right to examine the books of the insured is based upon the following provision contained in each of the five policies: "The company shall have the right and opportunity at all reasonable times to examine the books of the assured

so far as they relate to the compensation paid to their employes.'' The amount of premium due on the policy bore a direct ratio to the gross amount of wages paid by the assured to its employes during the year, the premium rate being 67 cents for each $100 of wages the minimum premium, however, to be $25.

In 1899, when the first policy was being arranged for, it was impossible to tell exactly the gross amount of wages that would be paid by the insured to its laborers during the coming year. It was, however, estimated to be $5,000, and it was agreed that, if at the end of the year the amount of wages exceeded that sum, the insured was to pay the company the additional premium due under the terms of the policy; and, if it was found that $5,000 exceeded the amount paid for wages, then the company was to return to the insured the overplus. The amount, however, to be retained by the company was not to fall below the minimum premium of $25 in any event. At the end of the first year, it is conceded that the appellants gave the company a written statement of the gross amount of its wages during the insurance year, and paid to it the additional premium shown by the statement to be due. The facts that we have related concerning the first policy substantially occurred with reference to each succeeding policy, and therefore it will not be necessary in determining the legal principles involved to consider any other policy than the first, as the conclusion we have reached with reference to it will determine the rights of the parties as to the succeeding policies.

The insurance company admits that the insured paid to it the premium due on the estimated amount of wages when the policy was issued, and that, after

the expiration of the first year, a statement was furnished it by the insured showing an increased amount of wages actually paid over the estimated amount, and that they paid the increased premium shown to be due by this statement. The allegation of the petition with reference to the right of the company to examine the books of the insured is as follows: ''Plaintiff states that it has repeatedly requested the defendants that it be allowed to examine the books of the defendants, so far as they relate to compensation paid to their employes during the period of said policy, from July 6, 1899 at noon, to July 6, 1900, at noon, but the defendants and each of them have failed and refused, and still fail and refuse, to allow the plaintiff to examine their books and records; and the plaintiff states that it has no means or way of ascertaining the amount of compensation to employes expended by defendants during the period of said policy except by an examination of defendants' book and records, and plaintiff states and charges, and it believes, that an examination of the books and records of defendants during the period of said policy will show that the amount of said policy amounted to a much larger sum than the sum of $5,200, and that the defendants and each of them refuse to allow an examination of their books, as provided in said policy, because of the fact that an examination will show that they are indebted to this plaintiff in a large sum, the amount of which is unknown, as additional premium under said policy.''

A general demurrer was filed by the defendants to the petition and overruled by the court. The insured then filed an answer placing in issue all of the material allegations of the petition, and in a separate paragraph pleaded a set-

tlement in full of the premium due for each year of the period covered by the policies issued to them by appellee. The material affirmative allegations contained in the answer were traversed by reply; thus completing the issues. Both parties took the depositions of witnesses, and, after the evidence was all in, the case was submitted to the chancellor for final adjudication, who adjudged that the plaintiff was entitled to examine the books of the insured, and, when it appeared by supplemental petition that these had been destroyed and could not be produced, the case was referred to the commissioner of the court to hear proof and decide the gross amount of wages paid by the insured during each of the years covered by the policies; to all of which the defendants excepted and prayed an appeal to this court.

The first question urged upon our attention by the appellants is that the plaintiff failed to state a cause of action in its petition, in this: It does not allege that it requested to be allowed to examine the books of the insured at a reasonable time or times. It will be observed that the allegation is that "it has repeatedly requested defendants that it be allowed to examine the books of defendants," etc. The right of examination given by the policy is that the company shall have the right and opportunity at all reasonable times to examine the books of the insured. It seems to us that appellants' objection is well taken.

Clearly the insurance company must have made its demand to examine the books during reasonable hours and on reasonable days. For instance, it could not rightfully demand to look at the books on Sundays, or after business hours at night, or when the insured were themselves using the books. Now, the rule is

elementary that the allegations of every pleading are taken most strongly against the pleader; and, inasmuch as the allegation of the request and refusal does not measure up to the provision of the policy upon which it is based, the pleading is defective. Before the company could lawfully subject the insured to the cost and trouble of a lawsuit, it was incumbent upon it to make a demand to inspect the books at a reasonable time or times. The only object of the petition was to obtain an inspection of the books of the insured. It is not alleged that the insured are indebted to the company in any sum whatever; nor is it alleged that the settlement had at the end of each year was procured by fraud, or was made under a mistake as to the amount of wages paid. More than three years had elapsed since business relations between the company and the insured had ceased, and it was clearly incumbent upon the company, before it could harass the insured with litigation, that it should put itself within its rights under the clause in the policy authorizing an inspection of the books.

The next point pressed upon us by the appellants is that the evidence clearly shows that at the end of each insurance year a report was made to the company of the amount of wages actually paid in excess of the estimated amount set forth in the policy, and the additional premium paid upon this report, and, this being in the nature of a final settlement, the company was bound by it, unless the settlement was impeached because it was procured, either by fraud or under the influence of mistake. It seems to us that this position is sound. We do not agree with appellants that, because the insurance company accepted their statement of the additional insurance due and received the checks given in payment of it, this

amounts to a final settlement which would preclude the company from recovering whatever was actually due. All that we hold is that there was a settlement which is final unless impeached either for fraud or mistake. Certainly the company is not estopped from recovering whatever is actually due it, although it made a settlement at the end of each year with the insured, if it should be made to appear that this settlement was made, as said before, under the influence either of fraud or mistake. Palmer Transfer Co. v. Fidelity & Casualty Co., 118 S. W. 370, 133 Ky. 547. But fraud or mistake must be pleaded and proved. The company cannot make a settlement with the insured at the end of the year—in its nature final —and then, afterwards, at any time it sees fit, institute a suit to discover whether or not the amount received by it was correct without alleging some reason for impeaching the settlement.

We do not find it necessary to look into the question as to whether or not the checks given by the insured had written in their face "in full of all demands." This was. a disputed question, and we will not go behind the chancellor's finding on this question of fact; indeed, we are inclined to believe that his conclusion is sustained by a preponderance of the testimony.

For the reasons herein given, the judgment is reversed for proceedings consistent with this opinion. When the case returns, both parties may be permitted to amend their pleadings if desired, and to adduce further evidence in support of any new issue or issues joined.